**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of Jolley Associates }
}
} Docket No. 118-8-01 Vtec
}
}

**Decision and Order on AGood Faith@ Issue**

Appellant Jolley Associates appealed a decision of the Zoning Board of Adjustment (ZBA) of the Town of Shelburne, applying the amended zoning ordinance rather than the 1995 zoning ordinance to their application, upon remand of the application to the ZBA after decision by the Vermont Supreme Court in In re Handy and In re Jolley Associates, 171 Vt. 336 (2000). Appellant-Applicant is represented by Howard J. Seaver, Esq.; and the Town of Shelburne is represented by Joseph S. McLean, Esq.

By agreement of the parties, the merits of this matter were bifurcated, so that the Court first would consider and rule on whether the application was A validly brought and pursued in good faith,@ as required by the Vermont Supreme Court in its decision, and then if necessary would schedule a further evidentiary hearing on the merits of the application. This first stage of the case was submitted to the Court after an evidentiary hearing and the filing of legal memoranda. Upon consideration of the evidence and memoranda, the Court finds and concludes as follows on the issue of A good faith.@

The Planning Commission met in September and in the fall of 1996 to discuss the preparation of zoning bylaw amendments, but those amendments were not drafted or prepared for public discussion at that time.

On December 3, 1996, the Town published notice of a December 19, 1996 Planning Commission hearing to consider proposed zoning bylaw amendments. One of these amendments proposed to eliminate the use category of A gas station@ use in the Residential-Commercial zoning district.

At the December 19, 1996 Planning Commission hearing, the Planning Commission voted to recommend to the Selectboard that the amendments be adopted.

On January 5, 1997, the Selectboard published notice of a January 21, 1997 public hearing to consider the proposed zoning bylaw amendments.

The minutes of the January 21, 1997 public hearing of the Selectboard reflect that a representative of another developer asked a A procedural question@ regarding an application including a gas station denied in July 1996 which he described as being A in the process of reworking.@ The minutes state as follows:

It is his understanding that if these [zoning bylaw] revisions are adopted the Selectboard will have to hear a request for the new proposal [to] move forward in the approval process. He asked when the appropriate time will be to do this. [Town Planner] Bortz explained [that] this situation is addressed by state statute, and she is working with the Town=s attorneys on the specifics of how to handle this. She said if these revisions are passed at this meeting they will go into effect in 21

days. **Any applications filed during the 21 day period must be heard by the Selectboard.** (Emphasis added).

The Astate statute@ referred to in the minutes is 24 V.S.A. ' 4443(c) as then[1] in effect. On page 3 of the minutes, Ronald I. Bouchard, representing Pizzigalli Investment Co. (owner of the Shelburne Meadows Business Park), stated that Pizzigalli was under contract to sell the property at issue in this case to Appellant, and that

they are nearly ready to make a presentation for a gas station facility. He asked, procedurally, what can be done. [Town Planner] Bortz answered that **if the revisions are adopted following this hearing, an application would have to be heard by the Selectboard**. If the revisions are not adopted, or if the hearing is continued, an application would take the current route. (Emphasis added).

At the January 21, 1997 meeting of the Selectboard, a majority of the Selectboard voted to adopt the proposed zoning bylaw amendments. Pursuant to 24 V.S.A. ' 4404(c), the adopted zoning bylaw amendments became effective February 11, 1997.

In In re Handy and In re Jolley Associates, 171 Vt. 336 (2000), the Supreme Court struck down 24 V.S.A. ' 4443(c) as providing no standards for the Selectboard review of an application during the time before the effective date of the zoning bylaw amendment. The Supreme Court remanded for the ZBA in the first instance to apply vested rights jurisprudence and to determine whether each appellant= s application was > validly brought and pursued in good faith,= sufficient to entitle the applicant to proceed under the older zoning ordinance. The Supreme Court noted as to Jolley Associates= application that because it A came later in the process, its burden to show that it did not engage in a race to put in some development proposal before the ordinance became effective is much higher.@

Jolley Associates (Appellant) is a real estate holding company in Vermont that owns 41 gasoline stations, of which 30 have convenience stores. A related company, S.B. Collins, is the petroleum distributor that supplies gasoline and diesel fuel to Appellant= s stations. Appellant operates 22 of the gas station/convenience stores itself; the rest are operated by lessees. It has opened at least one a year for the last fifteen years. Since the mid- to late- 1980s, it has included a deli, sit-down restaurant, or take-out food service in the convenience store wherever possible. It does not own one in Shelburne, but prior to 1996 had been looking for a suitable property in Shelburne. Prior to 1996, Appellant had looked at three properties in Shelburne, none of which was suitable.

In the early part of 1996, Steven Smith, vice-president and general manager of S.B. Collins and working on behalf of Appellant, heard that a suitable lot might be available in the business park owned by Pizzigalli Investment Properties (Pizzigalli) at a signalized intersection on Route 7, near the new location for Almartin Volvo. He approached Bob Bouchard at Pizzigalli to discuss the matter. Appellant had done some joint ventures elsewhere in the state with McDonald= s, and Mr. Smith also contacted a representative of McDonald= s at that time. They discussed a 52-seat restaurant and convenience store. McDonald= s was interested in doing a joint venture with Appellant at this location, and provided Appellant with so-called out-of-the-box standard plans for a building containing a 52-seat restaurant and convenience store, and one for a building containing a 77-seat restaurant and convenience store. These plans were for the buildings only, and were not site-specific.

Appellant then contacted an engineer, who prepared site-specific plans in mid-April 1996, meeting the setbacks and other requirements of the Shelburne zoning regulations. Appellant had a purchase and sale agreement with Pizzigalli for the lot at that time, with a closing date in July of 1996. While Appellant was hopeful of concluding an arrangement with McDonald= s, Appellant

was prepared to go ahead with the site with or without McDonald=s, and intended to set a construction date in the Spring of 1997..

As of the July 1996 closing date, negotiations with McDonald=s were still ongoing, so Appellant opted to extend the purchase and sale agreement, for an additional payment of $5,000. McDonald=s had concerns about the proposed distance of the building from the road and the proposed signage. Accordingly, Mr. Bouchard from Pizzigalli requested a meeting with the town planning and zoning officials to discuss the project. That meeting was held in late September 1996, and included Mr. Bouchard for Pizzigalli, Mr. Smith and Appellant=s attorney for Appellant, an engineer and real estate manager representing McDonald=s and Ms. Kate Bortz and Mr. Bill Youngblood from the Town=s Planning and Zoning departments, respectively.

The September 1996 meeting lasted about an hour, at which those present discussed the proposal for a gas station, convenience store and McDonald=s restaurant, including the site-specific plans for the property and the elevation drawings of the standard McDonald=s buildings. They discussed the types of signs and the setback of the buildings. The Town=s representatives discussed that the Town=s policy was firm regarding its sign ordinance, that the lot probably would not qualify for a variance from the setback requirements, and especially that the applicants might want to consider a less standard building design. They discussed the architecture of the Almartin Volvo building nearby, and its approval in the Town=s zoning process. There was also some problem with approval of a drive-through window or lane. The McDonald=s representatives planned to discuss the project, including the architecture and signage, with their regional office.

The first working meeting of the Planning Commission to consider regulatory changes for the Residential-Commercial zoning district also occurred at about the same time, on September 24, 1996. The Town officials did not mention the possibility of zoning changes for the district at the meeting with Appellant. It is not the practice of the Planning Commission or the Town=s planning staff to discuss regulatory changes with the public at this early a stage of their development.

Within a week of the meeting, the McDonald=s representatives informed Appellant that McDonald=s was no longer interested in this project. At some time in the fall of 1996, Pizzigalli=s representative Bob Bouchard may have mentioned in passing to Ms. Bortz or Mr. Youngblood, the town zoning and planning officials, that the deal with McDonald=s had fallen through. While Mr. Bouchard understood that Appellant was still considering the project, either with another fast food chain or on its own, he did not discuss the details of Appellant=s continued planning for the project with the town officials, and they were unaware of any continued work on Appellant=s part towards pursuing the project.

Appellant then proceeded to consider other fast food chains which might be possible as partners for the site. Mr. Smith=s last discussion with representatives of an alternative national fast food chain was with a Taco Bell representative on November 13, 1996; that discussion did not result in a >deal.= Mr. Smith then discussed the project with Bob Jolley, a principal of Appellant, who directed him to move forward with the project and to hire an architect to design the building. If the discussion of the design and architecture of the building had not been the focus of the September 1996 meeting with the Town officials, Appellant might have considered hiring an architect in any event, but instead might have considered using plans already designed for its buildings elsewhere in the state. The next closing date was approaching at the end of November, 1996, and Appellant again opted to extend the purchase and sale agreement to a closing date of March 27, 1997, for an additional payment of $5,000, still intending to begin construction in the Spring of 1997.

Appellant hired Tom Cullins as the architect for the project because he had designed several projects in Shelburne that had been approved in the zoning process and had been mentioned in the September 1996 meeting. Approximately November 24, 1996, when meeting with Mr. Bouchard from Pizzigalli to extend the contract, Mr. Smith asked Mr. Bouchard to set up a

meeting with the architect. The meeting took place on December 3, 1996, with Mr. Cullins, Mr. Smith, Mr. Ron Bouchard and Mr. Bob Bouchard, at the offices of Pizzigalli. Mr. Smith mentioned to Mr. Cullins that the Town seemed to be happy with the Almartin building, and directed Mr. Cullins to design a > unique and different= building that would be acceptable to the Town for that lot.

As of the date of that meeting, Appellant= s representatives were not aware that the Planning Commission were publishing a notice of a public hearing on zoning changes that would prohibit gas stations as an allowed use in this zone. Mr. Ron Bouchard advised Mr. Smith of that notice and the scheduled Planning Commission hearing shortly thereafter. Appellant did not change any aspect of its project and did not change its instructions to the architect based upon learning of the proposed ordinance change.

Mr. Smith did not attend the Planning Commission or the Selectboard meeting on the proposed ordinance change; he knew that Mr. Ron Bouchard was planning to attend. Mr. Smith met again with the architect on December 17, 1996, reviewed the fees and schedule, and discussed that Appellant wanted to begin construction in the Spring of 1997. They met again on January 9, 1997 (postponed from January 6 by the architect= s schedule) with another architect in Mr. Cullins= firm who would be handling the direct design work; and again on January 15, to look at preliminary drawings and renderings. Mr. Smith took these to show Mr. Jolley, and Appellant went forward with the project. At some time in January Mr. Smith became aware that the Selectboard had approved the amended zoning regulations at its January 21, 1997 meeting, that the new regulations would prohibit two of the three planned uses for the project, and that the new regulations= effective date was February 13, 1997. He understood that the application had to be filed before that effective date to be considered under the old regulations. He directed the architects to have the application filed before that date; it was filed on February 6, 1997. Appellant then purchased the property.

This course of conduct evidences that Appellant developed the concept for and plans for the project, and had substantial work done and expended funds in furtherance of the project, well in advance of Appellant= s actual knowledge of the proposed regulation amendment and prior to the beginning of the > pendency period,= even as counted under the former 24 V.S.A. ' 4443(c), both approximately December 3, 1996. We conclude that Appellant has met its admittedly high A burden to show that it did not engage in a race to put in some development proposal before the ordinance became effective.@ In re Handy and In re Jolley Associates, 171 Vt. 336, 351 (2000).

The Town argues that the Court should apply the > pending ordinance= exception to Vermont= s vested rights doctrine, as recently applied by the Vermont Environmental Board in John A. Russell Corporation and Crushed Rock, Inc., Land Use Permit #1R0489-6-EB(Remand)-EB (January 17, 2002). While that doctrine is a valuable policy analysis, it should not be applied automatically to block consideration of the application under the old regulation in this case. Rather, we must determine from the sequence of events in this particular case whether this particular applicant acted in good faith. At the time the application was made, the former version of 24 V.S.A. ' 4443(c) was in effect and the parties were entitled to act according to its provisions to file an application for review by the Selectboard during the > pendency period.= If the new regulation were to apply automatically (as it does under the new version of what is now ' 4443(d)), then the application could not have been considered on its merits as the proposed uses would have been prohibited in the district. If that had been the case, the assurances given to the applicant during the January 21, 1997 Selectboard meeting, that the Selectboard would consider the application if it was filed at any time until the effective date of the new ordinance, would have been meaningless. As the Supreme Court explained in its decision in this matter, the filing of an application very late in the ordinance amendment process may raise an inference or even a presumption that the application was not filed in good faith. But that inference or presumption is rebuttable, not absolute. It may be overcome by evidence to the contrary, as has been done here.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant= s 1997 application was validly brought and pursued in good faith, and that Appellant is entitled to have its application considered on its merits under the older version of the zoning ordinance.

Dated at Barre, Vermont, this 7th day of March, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnote**

[1.]   This section was struck down by the Vermont Supreme Court in its decision issued on November 17, 2000 in In re Handy and In re Jolley Associates, 171 Vt. 336 (2000). The currently-applicable state statute was adopted in the 2001 legislative session, 24 V.S.A. §4443(d). Rather than establishing standards for the selectboard review in the former statute, it now provides that applications filed during the five months (150 days) after the public notice of the first public hearing before the legislative body on a zoning bylaw amendment must be reviewed under the proposed bylaw. If the bylaw is not adopted or takes longer than the 150 day period, then the applicant may opt to have the application reviewed under the old bylaw at no additional expense.