STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Paul L. and                         }
Catherine Handy                                      }
                                                     }    Docket No. 96-6-01 Vtec
                                                     }
                                                     }

**Decision and Order on AGood Faith@ Issue**

Appellants Paul L. and Catherine Handy appealed a decision of the Zoning Board of
Adjustment (ZBA) of the Town of Shelburne, applying the amended zoning ordinance rather than
the 1995 zoning ordinance to their application, upon remand of the application to the ZBA after
decision by the Vermont Supreme Court in In re Handy and In re Jolley Associates, 171 Vt. 336
(2000). Appellant-Applicants are represented by Douglas K. Riley, Esq.; the Town of Shelburne is
represented by Joseph S. McLean, Esq. When the term A Appellant@ is used in the singular it
refers to Appellant Paul Handy.

By agreement of the parties, the merits of this matter were bifurcated, so that the Court first
would consider and rule on whether the application was A validly brought and pursued in good
faith,@ as required by the Vermont Supreme Court in its decision, and then if necessary would
schedule a further evidentiary hearing on the merits of the application[1]. This first stage of the
case was submitted to the Court on agreed facts and oral and written argument and memoranda.
Upon consideration of the agreed facts and the written memoranda, the Court finds and
concludes as follows on the issue of A good faith.@

Appellants= property at issue in this appeal is approximately 3 acres in area, and is located at
the southeast corner of Shelburne Road (U.S. Route 7) and Martindale Road in the Town of
Shelburne, at an address known as 1918 & 1920 Shelburne Road. It contains an existing
convenience/liquor store (with a 6150-square-foot footprint) and a residence (with a 1800-square-
foot footprint). Appellant leased the convenience store portion of the property and operated the
convenience store from approximately 1973 to July 9, 1999, when Appellants purchased the
entire property, continuing to operate the convenience store.

 In 1991, Civil Engineering Associates developed conceptual plans for the property, including
an addition to the store property, moving the existing house and garage, and adding gasoline
service to the convenience store operation. Civil Engineering Associates submitted a so-called >
study plan= depicting such a proposal for informal review by the Town= s Planning Office in
October 1991, but no action appears to have been requested or taken at that time.

On April 8, 1993, the Planning Commission approved a two-lot subdivision for the property,
creating a smaller lot known as Lot 1 with frontage only on Martindale Road, and a larger corner
lot known as Lot 2. A condition of the subdivision approval was that the house on Lot 2 be moved
to Lot 1. This subdivision approval is referred to in Exhibit K as having been attached, but was not
in fact attached to Exhibit K. The two lots appear on all the plans submitted as exhibits in this
matter, but no facts or exhibits were submitted stating whether any property transfers have taken
place.

In January or February of 1996, Appellant retained Civil Engineering Associates to redesign
the existing convenience/liquor store to add gasoline sales and an expanded retail sales and/or
expanded motor vehicle service business component. Civil Engineering Associates prepared the
May 1996 site plan at the direction of its principal Charles R. Dunham, showing the existing

house to be demolished and removed, and showing a substantially expanded convenience store building with gasoline pumps. In June of 1996, Appellant filed applications for setback variances and conditional use approval of the proposal as shown on the May 1996 Plan. The Zoning Bylaws have not been provided in this appeal; it is not clear to the Court whether any applications were made or should have been made under any section governing nonconforming uses or noncomplying structures, or whether that was the rationale for the conditional use applications.

The Zoning Board of Adjustment (ZBA) conducted a duly warned public hearing on Appellant=s applications on July 8, 1996. At the conclusion of the hearing, the ZBA voted to continue the public hearing to August 12, 1996 and also to conduct a site visit on that date. On August 12, 1996, the ZBA first conducted the site visit and then reconvened its public hearing on Appellant=s applications. The ZBA voted to deny the applications and issued a written decision the same day. Mr. Dunham of Civil Engineering Associates believed that the size and scale of the original project, as well as the proposal to remove the house, were significant factors leading to the denial; he notified Appellant of his opinion.

Following the August 1996 ZBA denial, Mr. Dunham began preliminary discussions with Appellant regarding possible changes to the project. He did not bill Appellant for services rendered in connection with these discussions during the months when they took place, but it was not his practice to do so. During these discussions, Mr. Handy insisted that the gasoline sale component remain a part of the project, although he was undecided about other aspects of the project. At some time following the August 1996 ZBA denial, Appellant hand-sketched two alternative project designs onto copies of the May 1996 Plan.

At some time following the August 1996 ZBA denial, Appellant contacted a real estate broker, Eric Farrell, for advice regarding development options, including alternatives for adding retail space to the property, and they discussed possible uses for the house on the property. No bills or other documentary evidence exists of these discussions.

At some time in the fall of 1996, not later than October, Mr. Dunham and Mr. Farrell walked through the house on the property and discussed issues related to the economic or development potential of the house. Mr. Farrell recalls reporting these discussions to Mr. Handy, but no documentary evidence exists of such a report.

Mr. Dunham took the last week of October and most of November 1996 off for hunting, as is his customary practice.

On December 3, 1996, the Town published notice of a December 19, 1996 Planning Commission hearing to consider proposed zoning bylaw amendments. One of these amendments proposed to eliminate the use category of A gas station@ use in the Residential-Commercial zoning district.

At some time in December 1996, after Mr. Dunham had returned from hunting, Appellant notified Mr. Dunham that Appellant had made up his mind on a project design for the property and wanted Civil Engineering Associates to produce an application for zoning approval. Appellant instructed Mr. Dunham to prepare a revised plan and application containing certain specified elements. No bills, notes or other documentary evidence exists of these discussions. At some time in December 1996, Mr. Dunham met with an associate, David Marshall, to brief him on the revised project for Appellant and asked him to work on it. No bills, notes or other documentary evidence exists of this briefing.

At the December 19, 1996 Planning Commission hearing, the Planning Commission voted to recommend to the Selectboard that the amendments be adopted. No representative of Appellants appeared or participated at the December 19, 1996 hearing.

Mr. Dunham first became aware of the proposed zoning amendments some time in December 1996, but does not recall the circumstances under which he became aware of the proposed changes. Mr. Marshall does not recall when he first became aware of the proposed zoning amendments.

On January 5, 1997, the Selectboard published notice of a January 21, 1997 public hearing to consider the proposed zoning bylaw amendments.

Mr. Marshall began work to produce a revised plan for Appellants= project in late December 1996 or early January 1997. In connection with that work, he sketched preliminary engineering details onto a copy of the March 1996 plan and the May 1996 plan, the later of which was dated as having been printed out on January 8, 1997. The work on the revised plan was completed by January 10, 1997, and Mr. Marshall submitted it to the Town on or about January 13, 1997, under a cover letter dated January 10, 1997. Neither Mr. Marshall nor any other representative of Appellant consulted with any representative of the Town in the course of developing or submitting this application.

The application proposed a 4,000-square-foot > superette= with three gasoline pumps, all within the footprint of the original 6,150-square-foot commercial building. It included applications for conditional use approval and for variances from the setback requirements of the Zoning Bylaws. Mr. Marshall= s cover letter refers to the earlier denial, and notes that the size of the proposed building has been reduced and that the residential building is to be retained, both A in accordance with@ the ZBA comments on the earlier application.

By letter dated January 17, 1997, the Town= s Zoning Coordinator, Mr. William Youngblood, wrote back to Mr. Marshall regarding the application, noting that the 1993 subdivision approval would require amendment, noting some concerns (now moot) regarding the Planned Unit Development requirements, alluding to their prior discussion of the pending bylaw changes affecting gas stations and the need for Selectboard consideration of the application.

The minutes of the January 21, 1997 public hearing of the Selectboard reflect that Mr. Dunham attended on behalf of Appellant. He asked a A procedural question@ regarding Appellants= application for the enlarged convenience store and gasoline pumps, that had been denied in A July@ (actually mid-August) 1996, which he described as being A in the process of reworking.@ The minutes state as follows:

It is his understanding that if these [zoning bylaw] revisions are adopted the Selectboard will have to hear a request for the new proposal [to] move forward in the approval process. He asked when the appropriate time will be to do this. [Town Planner] Bortz explained [that] this situation is addressed by state statute, and she is working with the Town= s attorneys on the specifics of how to handle this. She said if these revisions are passed at this meeting they will go into effect in 21 days. **Any applications filed during the 21 day period must be heard by the Selectboard.** (Emphasis added).

The Astate statute@ referred to in the minutes is 24 V.S.A. ' 4443(c) as then[2] in effect. On page 3 of the minutes, a representative of another landowner in the district reported being under contract to sell property to another applicant which was:

nearly ready to make a presentation for a gas station facility. He asked, procedurally, what can be done. [Town Planner] Bortz answered that **if the revisions are adopted following this hearing, an application would have to be heard by the Selectboard**. If the revisions are not adopted, or if the hearing is continued, an application would take the current route. (Emphasis added).

Thus, the January 21, 1997 public hearing minutes do not suggest that a gasoline station component of a project would necessarily be denied if submitted during the pendency period, but only that it would have to be heard by the Selectboard. At the January 21, 1997 meeting of the Selectboard, a majority of the Selectboard voted to adopt the proposed zoning bylaw amendments.

On January 22, 1997, Mr. Marshall responded to the Zoning Coordinator= s January 17, 1997 letter, enclosing further revisions to the plans and also requesting variances from the Planned Unit Development requirements of the Zoning Bylaws.

Pursuant to 24 V.S.A. ' 4404(c), the adopted zoning bylaw amendments became effective February 11, 1997.

In In re Handy and In re Jolley Associates, 171 Vt. 336 (2000), the Supreme Court struck down 24 V.S.A. ' 4443(c) as providing no standards for the Selectboard review of an application during the time before the effective date of the zoning bylaw amendment. The Supreme Court remanded for the ZBA in the first instance to apply vested rights jurisprudence and to determine whether each appellant= s application was > validly brought and pursued in good faith,= sufficient to entitle the applicant to proceed under the older zoning ordinance. The Supreme Court noted that the later an application is filed with respect to the bylaw amendment process, the higher is the applicant= s A burden to show that it did not engage in a race to put in some development proposal before the ordinance became effective.@

Appellants= and Mr. Dunham= s course of conduct in the present case evidences that Appellant originally developed the proposal and plans and sought approval of a gas station modification of the existing convenience store/liquor store use on the property for the ZBA= s consideration in July and August of 1996. After that denial, Appellant began exploration of various ways to modify and/or downsize the project with a view towards resubmitting a modified proposal that could be approved. Appellants worked during the remainder of the fall available to them to modify that proposal for resubmittal, even though they did not consult with the zoning and planning staff during that time. After becoming aware of the zoning bylaw change, Appellants= representative discussed with the zoning staff the protocol for approval of the application in light of the zoning bylaw amendment, and understood that the application would have to go before the Selectboard. Appellants have met their burden to show that they submitted their revised proposal in good faith.

The Town argues that the Court should apply the > pending ordinance= exception to Vermont= s vested rights doctrine, as recently applied by the Vermont Environmental Board in John A. Russell Corporation and Crushed Rock, Inc., Land Use Permit #1R0489-6-EB(Remand)-EB (January 17, 2002). While that doctrine is a valuable policy analysis, it should not be applied automatically to block consideration of the application under the old regulation in this case. Rather, we must determine from the sequence of events in this particular case whether this particular applicant acted in good faith, because at the time the application was made, the former version of 24 V.S.A. ' 4443(c) was in effect and the parties were entitled to act according to its provisions to file an application for review by the Selectboard during the > pendency period.= If the new regulation were to apply automatically (as it does under the new version of what is now ' 4443(d)), then the application could not have been considered on its merits as the proposed uses would have been prohibited in the district. If that had been the case, the assurances given to the applicant and the public during the January 21, 1997 Selectboard meeting, that the Selectboard would consider the application if it was filed at any time until the effective date of the new ordinance, would have been meaningless.

As the Supreme Court explained in its decision in this matter, the filing of an application apparently late in the ordinance amendment process may raise an inference or even a

presumption that the application was not filed in good faith. But that inference or presumption is rebuttable, not absolute. It may be overcome by evidence to the contrary, as has been done here.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants= 1997 application was validly brought and pursued in good faith sufficiently so that Appellants are entitled to have their application considered on its merits under the older version of the zoning ordinance. The hearing on the merits is scheduled for March 28, 2002. However, a conference will be scheduled as soon as possible to discuss what remains of the project after the March 6, 2002 filing, and whether any portion of the regulations applicable to preexisting buildings must be considered in the present case.

Dated at Barre, Vermont, this 11th day of March, 2002.


_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1]  On March 6, 2002, Appellants filed a dismissal of: "All portions of the Application that seek commercial use of the house on the subject property, that request approval of the property as a Planned Unit Development (PUD), and that seek variances from any of the portions of the Shelburne Zoning Regulations dealing with Planned Unit Development." Appellants stated: "In connection herewith, Applicants withdraw their proposal to use the house on the property for any purpose that is not a valid, pre-existing, non-conforming use or other permitted use. The Applicants continue to seek variances from the yard requirements for the Residential-Commercial District under Shelburne Zoning Regulations, Section 830.2."

[2]  This section was struck down by the Vermont Supreme Court in its decision issued on November 17, 2000 in In re Handy and In re Jolley Associates, 171 Vt. 336 (2000). The currently-applicable state statute was adopted in the 2001 legislative session, 24 V.S.A. §4443(d). Rather than establishing standards for the selectboard review in the former statute, it now provides that applications filed during the five months (150 days) after the public notice of the first public hearing before the legislative body on a zoning bylaw amendment must be reviewed under the proposed bylaw. If the bylaw is not adopted or takes longer than the 150 day period, then the applicant may opt to have the application reviewed under the old bylaw at no additional expense.