STATE OF VERMONT

ENVIRONMENTAL COURT

|                              |   |                         |
|------------------------------|---|-------------------------|
|                              | } |                         |
| 'Appeal of Bone Mountain, LLC | } | Docket No. 114-6-04 Vtec |
|                              | } |                         |
|                              | } |                         |

'

### Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicant Bone Mountain, LLC (Bone Mountain) appealed from three conditions[1] in the decision of the Development Review Board (DRB) of the Town of Wilmington, granting its application for conditional use approval to expand its brew pub business from twenty-five to eighty-five seats. Neighbors Gerald and Sheila Osler filed a cross-appeal challenging whether the application meets the parking requirements of the Zoning Ordinance or adversely affects existing community facilities. Appellant-Applicant is represented by Robin L. Stern, Esq.; Cross-Appellants are represented by Robert M. Fisher, Esq.; and the Town of Wilmington is represented by Jill E. Spinelli, Esq. Appellant and Cross-Appellants each moved for summary judgment regarding whether the proposal satisfies the parking requirements of the Zoning Ordinance. The Town had the opportunity to but declined to file a memorandum on the motions.

The following facts are undisputed unless otherwise noted. Appellant-Applicant operates a twenty-five seat restaurant and brew pub in an existing 200-year-old building located at 3 North Main Street (Route 100) in the Commercial and Design Review zoning districts, near the center of what the DRB characterizes as the 'village' area. The building is served by municipal water supply and wastewater disposal. At present, the first floor of the building is used for the restaurant and brew pub, the second floor of the building is used for office and storage space for the business, and the third floor of the building is used as a residential apartment. No party has suggested that the existing use in the building failed to obtain any necessary municipal permits. However, neither party has supplied any existing permits; therefore we cannot determine whether Appellant-Applicant obtained any approval of the existing uses, which would have become final without appeal.

As of December of 1990, the building was in use as an apartment building and ice-cream parlor. As neither party has supplied any permit for those prior uses, we cannot determine whether the prior owner obtained any approval of the prior uses, which would have become final without appeal, or whether they were treated as pre-existing uses on that property.

Prior to 1990 the building had been located on a larger lot, which contained a barn that was attached to the Town office building. In December of 1990 the former owners obtained a state subdivision permit approving the division of the land for transfer of the

land with the barn to the Town for conversion to Town office use. That state permit approved the existing building for "the existing apartment building and ice cream parlor" and required that "no alteration to the existing building[s] which would change or affect the water supply system or the wastewater disposal system shall be allowed without prior review and approval." Because the parties did not supply the plans incorporated by reference in the 1990 state subdivision permit, and did not provide any municipal subdivision permit, we cannot determine the size of the former larger lot.

Based on the state subdivision permit, it appears that in 1990 the lot became more non-conforming than it had been before, at least as to lot size, lot coverage, and parking. We cannot determine from the materials supplied by the parties whether that division constituted a violation of §3(c) of the Ordinance, whether that section or a similar section was in the ordinance in 1990, or whether the owner had obtained a variance, special exception or other approval of the resulting undersized lot or the lack of off-street parking for the business on the lot. §3(d).

As it now exists, the lot and building do not comply with the Zoning Ordinance in the following respects. The lot size is .14 acre, much less than the minimum one-acre lot size for commercial uses in the Commercial district, §6(B)(2)(b), and just over the one-eighth acre size allowed for any development of an existing small lot. §3(e). Its frontage is 56 feet, less than the minimum of 150 feet required for commercial uses in the

Commercial district. §6(B)(2)(b). Its lot coverage is approximately 68%, exceeding the 25% limit for commercial uses in the Commercial District. §6(B)(2)(b). It also fails to meet the required setbacks of 40 feet from the limits of the public road and from any other property line, as all its setbacks are less than 20 feet. §6(B)(2)(b).

A fifteen-foot-wide driveway serving the property runs along the north side of the building for a length of approximately forty-eight feet. The driveway does not meet the minimum width of twenty feet required for commercial uses in the Commercial District. §6(B)(2)(b). The driveway has enough room to park one or two employee vehicles and to provide access to the building''s side door and to the dumpster, located at the far end of the driveway. No other parking is available on the property. The property therefore lacks the minimum required parking (of 200 square feet (one space) per every three persons to be accommodated on the premises) for its existing 25-seat restaurant plus its apartment. The property is located close to the center of the 'village' in the Commercial zoning district. Businesses in this area attract large numbers of tourists, especially during fall foliage and ski season. A total of approximately 125 to 148 public parking spaces are available nearby: along the four branches of Main Street, including Vermont Routes 9 and 100, and in the three public parking lots. Restaurant seating in the area using those spaces represents over 700 seats, without addressing the parking requirements for other retail businesses. As the DRB recognized in the present decision

on appeal, parking in the ''village' area is already insufficient to meet the needs of local businesses, and addressing this deficiency is a community problem that has not yet been resolved.

In the present application, Appellant-Applicant has applied for conditional use approval to expand the restaurant and brew pub from twenty-five seats to eighty-five seats by converting the second floor from office and storage space to restaurant use and by converting the third floor from an apartment to office space, eliminating the apartment use. After remodeling, Appellant-Applicant proposes to use the ground floor for a forty-five seat restaurant, the kitchen, the brewery, and two restrooms, and proposes to use the second floor for a thirty- to thirty-five seat bar, and two additional restrooms. Appellant-Applicant also proposed to present performances of live music in the restaurant and to change the windows and doors leading to a second-floor porch to make it available to patron use. Appellant-Applicant does not propose to change the building's footprint.

The DRB granted Appellant-Applicant's conditional use permit, although it noted that the application fails to meet the off-street parking requirements of the Zoning Ordinance, that the existing public and on-street parking is inadequate and that the available parking "does not meet the need already." The DRB specifically concluded that "'the applicant's additional seating request will not greatly increase the number of people that are already here looking for non-existent parking spaces," and stated that it had not applied the

§'6(B)(2)(b) parking requirements "to Commercial Conditional Use Permits in the Village area for more than twelve years specifically because of the lack of potential new parking spaces."

While the Court understands the serious problem of lack of off-street public or private parking spaces in the 'village' area, neither the DRB nor this Court, sitting in the place of the DRB, may disregard the requirements of the Zoning Ordinance. If the Town wishes to define the boundaries of the 'village' area and to suspend the applicability of the §6(B)(2)(b) parking requirements to commercial conditional use permits in the 'village' area, as the DRB says has been done de facto for the last twelve years, it must do so by amending the ordinance. This Court cannot apply or follow an unwritten practice of the DRB; rather, the standards applicable to conditional use applications must be ascertainable in the Zoning Ordinance. See In re Appeal of Miserocchi, 170 Vt. 320, 325 (2000); and see In re Handy and In re Jolley Assoc., 171 Vt. 336, 344-49 (2000). Nor is it fair to applicants for a Town to have unwritten zoning requirements or exemptions, both because they might be differentially applied to one application and not to another, and because there is no way for an applicant to know in advance whether to proceed with an application that may not appear to comply with the zoning standards found in the ordinance.

Similarly, if the DRB wishes to allow applicants to satisfy the parking requirements of the Zoning Ordinance by demonstrating that sufficient parking spaces are available nearby in either public or private lots, the Town must amend its ordinance to adopt such a provision. See, e.g., the ordinances applied in In re: Appeals of Miserendino, et al., Docket Nos. 85-5-99 and 191-10-99 Vtec (Vt. Envtl. Ct., Jan. 13, 2000); aff'd' Docket No. 2000-189 (Vt. Sup. Ct., Aug. 23, 2001) (three-justice panel, unpublished) (applying Town of Warren Zoning Bylaws Article VI, §3(K)), which allows the Planning Commission to "waive or revise" the parking standards based on its review of the specific proposed "mix of uses" and the "proximity to public parking;" and In re Appeal of Hehir, Docket No. 130-6-00 Vtec (Vt. Envtl. Ct., Dec 28, 2001), aff'd' Docket No. 2002-064 (Vt. Sup. Ct.; Sept 25, 2002) (three-justice panel, unpublished) (applying City of Burlington Zoning Ordinance §'10.1.13, which allows off-property parking to count towards the parking requirement as long as the spaces are not more than 400 feet from the lot that the parking spaces serve).

We note for the parties' guidance that if the Town wishes to adopt a parking waiver provision, or to place a moratorium on applying the parking standards to commercial conditional uses in a defined 'village' area, or to provide standards for determining whether off-site parking can be counted towards satisfaction of an applicant's parking requirements, a new application could be considered under the proposed ordinance amendment as soon

as it is proposed for public hearing (and for 150 days thereafter). Since July of 2001, it has not been necessary to wait until the amendment has been adopted or until its effective date. 24 V.S.A. §4449(d) (formerly §'4443(c)).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Cross-Appellants' Motion for Summary Judgment is GRANTED, and Appellant-Applicant's Motion for Summary Judgment is DENIED, concluding the appeal. Appellant-Applicant's application fails to meet the parking requirements of the Zoning Ordinance and must be denied, without prejudice to resubmitting the application should the Town propose an ordinance amendment under which it could be considered.

Based on this decision, the hearing reserved for June 7, 2005 has been cancelled.

'

Done at Berlin, Vermont, this 11th day of May, 2005.

'

'

'

'

'

_____

Merideth Wright
Environmental Judge

_____

[1] Prohibition of customers on second-floor porch, prohibition of amplified music; and prohibition of live music after 10:00 p.m. on Sunday through Thursday nights and after midnight on Friday and Saturday nights.