STATE OF VERMONT

SUPERIOR COURT
Vermont Unit

ENVIRONMENTAL DIVISION
Docket Nos. 129-9-12 Vtec
163-11-12 Vtec
68-5-14 Vtec
69-5-14 Vtec
& 70-5-14 Vtec

| | |
|---|---|
| Hinesburg Hannaford CU Approval; | |
| Hinesburg Hannaford SP Approval; | |
| Hinesburg Hannaford Subdivision Revision; | **DECISION ON MOTIONS** |
| Aubuchon (FH Plaza) SP Revision Application; & | |
| Automotion SP Revision Application | |

**Decision on Multiple Pre-Trial Motions**

Martin's Foods of South Burlington, LLC (Applicant) proposes to construct a 36,000 square foot Hannaford grocery store and pharmacy with associated parking on Lot 15 of the Commerce Park subdivision (the Project) in the Town of Hinesburg, Vermont (the Town). This development proposal requires multiple state and local land use permits and decisions, all of which, it seems, have been appealed or cross-appealed to this Court by Applicant or a group of interested persons who oppose the Project (Appellants). This decision address cross-motions for summary judgment filed in the three site plan appeals (Docket Numbers 163-11-12 Vtec, 69-5-14 Vtec, and 70-5-14 Vtec). In these three appeals, Applicant has filed a motion for partial summary judgment asking the Court to define the proper scope of the Town's site plan regulations, to strike those and other regulations as unconstitutionally vague, and to opine on whether conditions may be imposed on the project based on the regulations. Appellants have cross-moved, asking this Court to remand these matters to the municipal panel for failure to follow notice procedures related to what are alleged to be elements of the proposed

development that were not included in the applications now before the Court. Additionally, we address Appellants' motion to dismiss all five of the above captioned appeals for lack of jurisdiction. Applicant is represented by attorney Christopher D. Roy; Appellants are represented by attorney James A. Dumont; and the Town is represented by attorney Ernest M. Allen, III.

### Factual Background

For the sole purpose of putting the pending motions into context the Court recites the following facts which it understands to be undisputed unless otherwise noted:

1. Martin's Foods of South Burlington, LLC proposes to construct a 36,000 square foot Hannaford's grocery store and pharmacy with an associated 132-space parking lot on Lot 15 of the Commerce Park subdivision in the Town of Hinesburg, Vermont (the Project).

2. The Project is a permitted use in the zoning district in which it is located, subject to Site Plan Review and approval under the Town of Hinesburg Zoning Regulations (Regulations) in effect at the time of the application.

3. Applicant applied for site plan approval for the Project in November of 2010.

4. The Hinesburg Development Review Board (DRB) reviewed the application a total of 13 times from January 2011 through July 2012. The public hearing closed on July 17, 2012.

5. On August 29, 2012 the DRB provided notice to the public and Applicant that the hearing would be reopened. The hearing was reopened on September 8 and continued to October 2. The public hearing finally closed on October 2.

6. The DRB approved the application with conditions by written decision dated November 6, 2012.

7. Appellants timely appealed that approval to this Court and Applicant cross-appealed (the Hannaford site plan appeal). That appeal was given Docket Number 163-11-12 Vtec.

8. As a condition of the Hannaford site plan approval, Applicant was required to obtain site plan amendments for two existing developments on related parcels within the

2

Commerce Park subdivision as well as an amendment to the Hannaford subdivision permit.

9. The first site plan amendment is a revision to the Automotion site plan approval, originally granted by the DRB on December 9, 2005. Applicant proposes changes to parking, landscaping, and stormwater drainage for the Automotion property.

10. On May 6, 2014 the DRB denied the application to revise the Automotion site plan and Applicant timely appealed that denial to this Court. That appeal was given Docket Number 70-5-14 Vtec (the Automotion appeal).

11. The second site plan amendment is a revision to the Aubuchon site plan approval, also known as the Firehouse Plaza. This property is located in the Commerce Park subdivision at the corner of Commerce Street and Vermont Route 116. Applicant proposes changes to parking, landscaping, and stormwater drainage for the Aubuchon property.

12. On May 6, 2014 the DRB denied the application to revise the Aubuchon site plan and Applicant timely appealed that denial to this Court. That appeal was been given Docket Number 69-5-14 Vtec (the Aubuchon appeal).

13. On May 6, 2014 the DRB denied Applicant's subdivision permit amendments to adjust boundary lines within the Commerce Park subdivision. Applicant appealed that denial and Appellants cross-appealed. That appeal was given Docket Number 68-5-14 Vtec (Commerce Park subdivision appeal). The cross-motions for summary judgment addressed in this decision do not relate to the Commerce Park subdivision appeal. Appellants' motion to dismiss all of the municipal appeals for lack of jurisdiction does apply to the Commerce Park subdivision appeal as does the Court's resolution of that motion in this decision.

14. Additionally, Applicant obtained a conditional use permit for certain activities at the Project from the DRB on August 30, 2012. That conditional use permit was also appealed by Appellants and given Docket Number 129-9-12 Vtec (Conditional Use appeal) and is the subject of a separate entry order issued contemporaneously with this decision. The motions for summary judgment in the Conditional Use appeal are not

addressed in this decision but are addressed in a separate decision. Appellants' motion to dismiss all of the municipal appeals for lack of jurisdiction does apply to the Conditional Use appeal as does the Court's resolution of that motion in this decision.

## Analysis

Applicant moves for partial summary judgment in all three site plan appeals (Docket Numbers 163-11-12 Vtec, 69-5-15 Vtec, and 70-5-14 Vtec), raising the same issues in each appeal. Specifically Applicant moves for summary judgment on its Questions 2–6, 8, and 9 in the Automotion appeal, Questions 2–6 and 8–11 of the Aubuchon appeal, and Questions 2–4 and 7–9 of the Applicant's Hannaford site plan appeal. Applicant's Questions ask whether certain regulatory provisions of the Town of Hinesburg Zoning Regulations are enforceable or unconstitutionally vague. Applicant also asks this Court to interpret the Site Plan Review Standards in the Regulations, specifically whether they set forth a list of mandatory requirements or simply factors to be considered when reviewing a site plan application. Additionally, Applicant moves for summary judgment and Appellants move to dismiss Appellants' Questions 1 and 2 in the Hannaford site plan appeal. Both Questions relate to whether certain off-site activities require this Court to dismiss these appeals for lack of jurisdiction or lack of proper notice.

### I.      Summary Judgment Standard

The Court will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). In opposing a motion for summary judgment, however, a party seeking to raise a dispute of facts must file with the Court "a separate and concise statement of disputed facts, consisting of numbered paragraphs with specific citations to particular parts of materials in the record . . . ." V.R.C.P. 56(c)(1)(A). These materials, whether already in the record or submitted by the party in response to the motion, must be in a form that would be admissible in evidence, including

4

affidavits and other evidentiary materials.  V.R.C.P. 56(c)(2).  The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."  V.R.C.P. 56(c)(3).  As the issues presented in Applicant's motions for partial summary judgment are legal in nature they are appropriately decided through summary judgment.

**II.     Applicant's Motions for Partial Summary Judgment in the Three Site Plan Appeals: the Hannaford appeal (Docket No. 163-11-12 Vtec), the Aubuchon appeal (Docket No. 69-5-14 Vtec), and the Automotion appeal (Docket No. 70-5-14 Vtec)**

There is considerable overlap in the Statements of Questions filed in these three appeals for which Applicant now seeks summary judgment.  Thus, rather than address each specific Question, we consider the following three issues raised by Applicant.  First, Applicant challenges the constitutionality of Regulations §§ 4.3.2, 4.3.4, 4.3.8(2), and 5.5, asking whether each provision is sufficiently clear to be enforceable or if it is unconstitutionally vague.[1] Second, Applicant challenges the proper interpretation of Regulations §§ 4.3.4 and 5.6.3, and specifically asks whether the Site Plan Review standards constitute mandatory requirements or discretionary factors to be considered.[2]  Finally, Applicant challenges the imposition of conditions, asking whether the Project may be conditioned to mitigate existing drainage problems on an adjoining property and "to what extent" site plan approval may be conditioned upon landscaping, lighting, and stormwater requirements "that are not based upon any express standards set forth in the Regulations."[3]  In a motion in response to Appellants' motion for summary judgment and to dismiss, the Town argues in support of a finding that the Regulations are constitutional, discusses interpretation of the Regulations, and supports the DRB's, and therefore this Court's authority to impose the conditions imposed.

As the interpretation of zoning regulations is primarily a question of law, these issues are appropriately resolved on summary judgment applying the traditional rules of statutory interpretation.

### A.  Applicant's Challenges to the Constitutionality of the Hinesburg Regulations

---

[1] Question 4 in all three appeals, Question 8 in the Automotion and Aubuchon appeals, and Questions 2 and 5 in the Aubuchon and Automotion appeals.
[2] Questions 2 and 3 in the Hannaford site plan appeal, Question 9 in the Automotion appeal, and Question 3 in the other two appeals.
[3] Questions 10 and 11 in the Aubuchon appeal, Question 6 in the Aubuchon and Automotion appeals, Question 9 in the Aubuchon and Hannaford appeals, and Questions 7 and 8 in the Hannaford appeal.

We first address whether certain provisions of the Regulations are enforceable or unconstitutionally vague. When reviewing a municipal land use decision, we begin with the presumption that a zoning regulation is constitutional. In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (citing Hunter v. State, 2004 VT 108, ¶ 31, 177 Vt. 339). Our approach to complaints of "standardless, arbitrary discretion focuses on the criteria for due process and equal protection." In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365 (citing In re Handy, 171 Vt. 336, 345-46 (2000). We will consider two factors to determine whether a regulation is void for vagueness and thus unconstitutional. First, we consider whether the regulation is "sufficiently precise that an ordinary person using the means available and ordinary common sense can understand the meaning and comply" and does not leave an applicant "uncertain as to what factors are to be considered by the [municipal panel]." Rogers v. Watson, 156 Vt. 483, 491 (1991) (citing Brody v. Barasch, 155 Vt. 103, 111 (1990); Town of Westford v. Kilburn, 131 Vt. 120, 124 (1973). Second, we consider whether the regulation provides standards that sufficiently guide municipal decisions and therefore do not allow for the "exercise of discretion in an arbitrary or discriminatory fashion." Pierce Subdivision, 2008 VT 100 at ¶ 20 (quoting Kilburn, 131 Vt. at 124).

Additionally, a balance must be struck between the flexibility a municipal panel must have in reviewing a specific development proposal and a landowner's right to know what standards govern an application. See Rogers, 156 Vt. at 491; see also Handy, 171 Vt. at 349; Kilburn, 131 Vt. 124 ("On one hand the standards governing the delegation of such authority should be general enough to avoid inflexible results, yet on the other hand they should not leave the door open to unbridled discrimination."). Thus, while we must "invalidate ordinances that 'fail to provide adequate guidance" and allow for "ad-hoc decision making that is essentially arbitrary," we will uphold general standards "accompanied by some ability of landowners to predict how discretion will be exercised." Pierce Subdivision, 2008 VT 100, ¶ 20 (quoting Kilburn, 131 Vt. at 125); Handy, 171 Vt. at 349. For this reason, we consider the regulation in the context of the entire ordinance so that "even if some of the bylaws' objectives are general," it may be constitutional "as long as other provisions impose specific limits to guide

6

and check the [decisionmaker's] discretion." Rogers, 156 Vt. at 491; Pierce, 2008 VT 100 at ¶ 24 ("By providing both general and specific standards for [] review, the bylaw strikes an appropriate balance between providing guidance to the Commission and avoiding inflexible requirements which would defeat the creativity and flexibility required to effectuate the goals of the [bylaws].")).

We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear, it must be enforced and no further interpretation is necessary. Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hill v. Conway, 143 Vt. 91, 93 (1983)). In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted).

i.      Regulation § 4.3.2

In Question 2 of both the Aubuchon and Automotion appeals, Applicant challenges the constitutionality of Regulations § 4.3.2, which states:

> In reviewing site plans, the Development Review Board may impose appropriate conditions and safeguards with respect to adequacy of traffic access, circulation, and parking; landscaping; screening; and other appropriate conditions and safeguards. The Development Review Board shall act to approve or disapprove such a site plan within sixty (60) days after the date upon which it receives the proposed plan, and failure to act within such period shall be deemed approval.

Although Applicant moves for summary judgment as to the constitutionality of this provision, neither motion for partial summary judgment discusses this provision with any specificity. Presumably, Applicant disagrees with this section's grant of authority to the DRB to impose "other appropriate conditions and safeguards." This, however, comports with 24 V.S.A. § 4416, which specifically allows a municipal panel to impose conditions on the site plan aspects enumerated in Regulations § 4.3.2 as well as "other matters specified in the bylaws." In fact, § 4.3.2 is almost verbatim from the statutory authorization for site plan review at 24 V.S.A.

7

§ 4416. This Regulatory provision, which establishes the authority to condition site plan approval in exactly the same way as the statute, does not leave an applicant uncertain as to what factors are to be considered and does not provide the DRB with limitless discretion such that its imposition of conditions could lead to unbridled discrimination. Applicant has therefore failed to overcome the presumption of constitutionality. Regulations § 4.3.2 is plainly constitutional.

ii.     Regulations § 4.3.4, Site Plan Review Standards

Applicant also challenges the Regulations' Standards for Site Plan Review under § 4.3.4, which state:

> **Site Plan Review Standards:** The Development Review Board shall review the site plan and supporting data before approval, approval with conditions, or disapproval is given, and shall take into consideration the following standards:
> (1) Safety of vehicular and pedestrian circulation on site and on the adjacent street network;
> (2) Adequacy of circulation, parking and loading facilities with particular attention to safety. Provisions for refuse storage and disposal, snow removal, and emergency access shall also be addressed where applicable.
> (3) Adequacy of landscaping, screening, setbacks, hours of operation and exterior building design in regard to achieving maximum compatibility with adjacent property and with the character of the neighborhood.
> (4) Adequacy of exterior lighting for safe circulation on the site without creating off-site glare and excess illumination.
> (5) Adequacy of sewer and water.
> (6) Adequacy of drainage and grading plan, ensuring treatment and control of stormwater runoff, control of soil erosion during and after construction, and proper design solutions for steep slopes and poorly drained areas.
> (7) Consistency with the Town Plan in regards to the pattern of development, preservation of significant natural and cultural resources, and the location and nature of existing and planned roadways and other public facilities.
> (8) Proper planning and design in regard to hazardous wastes and avoidance of runoff.
> (9) Conformance with design standards as stated in Sections 3.4.5 and 5.6, where they apply.

Applicant asks whether the standards within Regulations § 4.3.4 are sufficiently clear so as to pass constitutional muster. Applicant contends that § 4.3.4 empowers a lay DRB member with *carte blanche*

to opine broadly about technical issues such as 'adequacy of drainage and grading plan' with reference to manifestly vague and open-ended grants of discretion – in order to address standard-less goals such as '**achieving maximum** compatibility with adjacent property and with the character of the neighborhood,' '**ensuring** treatment and control of stormwater runoff,' and **ensuring** 'control over soil erosion during and after construction.

(Applicant's Mot. for Part. Summ. J. [Hannaford Appeal] at 11, filed Sept. 2, 2014 (emphasis in original)).

It is difficult to comprehend how Applicant contends that these relatively specific and clear provisions are "so vague that ordinary persons cannot understand what conduct is prohibited, and arbitrary and discriminatory enforcement is encouraged." Rogers v. Watson, 156 Vt. 483, 491 (1991) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983) (applying void-for-vagueness standard to penal statute)). First, as with § 4.3.2, the language used in Regulations § 4.3.4 closely matches the site plan review criteria authorized by statute. Additionally, not only do all nine standards describe with particularity what the DRB is to consider, they also require the DRB to consider whether the site plan adequately addresses those elements in order to maximize compatibility with the surrounding neighborhood and to ensure that stormwater is controlled and erosion minimized. While there is certainly some discretion in making the determination of what is "adequate," and such a determination may require review of technical issues, these standards are "sufficiently precise that an ordinary person using the means available and ordinary common sense can understand the meaning and comply." Id. at 492. Certainly this Court can understand and apply these standards within this de novo appeal.

Further, Applicant's concern that DRB members are not well suited to make the technical determinations required by these standards does not support a finding that the Regulations are so vague as to be unenforceable. Concerns with the way in which the DRB exercises its discretion are remedied by the right to a de novo appeal before this Court, where Applicant has the opportunity to ensure that the Regulatory provisions are interpreted and applied correctly.

Applicant's position seems to be that any discretion, if exercised to deny the project, is unconstitutional, ignoring the fact that regulatory provisions must be "general enough to avoid inflexible results." Town of Westford v. Kilburn, 131 Vt. 120, 125 (1973); Rogers v. Watson, 156

9

Vt. 483, 491 (1991) (recognizing that zoning is an "area where some imprecision and generality is necessary and inevitable"). What the DRB is to consider is clearly established and the Regulations, read as a whole, provide considerable guidance to the DRB and this Court on appeal in making the determination of whether a site plan application should be approved, approved with conditions, or denied. Section 4.3.4, including all of its subparts, is constitutional and will be enforced.

      iii.      <u>Regulations §§ 4.3.8 and 5.5, Landscaping and Parking Standards</u>

In addition to the standards in § 4.3.4 that relate to landscaping and parking, Applicant challenges the constitutionality of the more specific standards related to those issues, contained in Regulations §§ 4.3.8 and 5.5.

First, § 4.3.8 contains numerous standards and requirements for reviewing landscaping plans as part of site plan review. Specifically, the stated purpose of that section includes:

> Landscaping shall be required and a landscape plan submitted for all uses subject to site plan review . . . . In evaluating landscaping, screening, and street tree plan elements, the Development Review Board shall promote the retention of existing, healthy trees while encouraging the use of a variety of plant species that are suited to the site and soil conditions. Native plant species are preferred, and under no circumstances shall non-native invasive species be used.

Regulations §4.3.8. The Regulations go on to state more specific standards in § 4.3.8(2):

> <u>Landscaping Standards</u>: Landscaping can be seen as "green infrastructure" both for individual projects and for the Town as a whole. As such, a well-designed landscape plan is just as important as a properly-engineered road, sewer system, or stormwater control system.
>
> (a) The Development Review Board shall require compliance with any Tree Ordinance or Landscaping Design Standards enacted by the Town, subsequent to the effective date of these regulations. Landscaping can be seen as "green infrastructure" both for individual projects and for the Town as a whole. As such, a well-designed landscape plan is just as important as a properly-engineered road, sewer system, or stormwater control system.
>
> (b) There shall be a mix of large canopy tree species within each landscaping plan. To the extent practicable, these trees shall not be limited solely to street trees, and shall be included throughout the project area (e.g., front, side, rear yards).
>
> (c) Landscaping of Parking Areas. Except for parking spaces accessory to a single-family or two-family dwelling, all off-street parking areas subject to review by the Development Review Board, shall be landscaped with appropriate trees, shrubs, and other plants including ground covers, as

10

approved by the Development Review Board.  Deciduous shade trees shall be utilized to provide shade and reduce glare, and large expanses of parking shall include landscaped islands.  The Development Review Board shall consider the adequacy of the proposed landscaping to assure the establishment of a safe, convenient, and attractive parking area.

(d) Landscaping Budget Requirements.  The Development Review Board shall require the following minimum planting costs for all landscape plans. Landscaping standards must be addressed, regardless of the minimum planting cost calculation – i.e., spending above the minimum may be necessary.  Total landscaping improvement cost (not including cost to develop the plan) shall be no less than 3% of the first $250,000 in construction and site improvement cost, plus an additional 2% of the next $250,000 in construction and site improvement cost, plus an additional 1% of the remaining construction and site improvement cost over $500,000.  For example, a project with a construction and site improvement cost of $150,000 would require $4,500 in landscaping improvements; whereas, a $2,500,000 project would require landscaping of at least $32,500 ($7,500+$5,000+$20,000).  In evaluating landscaping requirements, the DRB may grant some credit for existing trees or for site improvements other than plantings (e.g., berms, stone walls, public art installations, etc.) as long as the objectives of this section are not reduced.

(e) Maintenance & Responsibility.  Plantings shown on an approved landscaping plan shall be maintained by the property owner in a vigorous growing condition throughout the duration of the use.  Plants not so maintained shall be replaced with new plants at the beginning of the next immediately following growing season.

In its motion for summary judgment, Applicant's primary contention is that the DRB improperly denied the application based on insufficient landscaping.  The DRB's decision is not binding in this de novo appeal nor grounds for holding that the landscaping review standards are unconstitutionally vague.  We therefore find Regulations § 4.3.8 to be constitutional and enforceable.

The DRB is given fairly broad discretion in determining the necessary parking under § 5.5.4, which provides that "[t]he DRB shall have the authority to determine the necessary amount of parking."  This discretion is not, however, without limit.  Section 5.5.4 refers to Table 2, which sets out a suggested minimum number of parking spaces for different use categories. For example, Table 2 suggests 1 parking space for every 400 square feet of a retail establishment's floor area.  Section 5.5.4 further directs that

11

The parking guidelines shown in Table 2 are generalized, and should be refined based on the specific use, predicted parking needs, public and shared parking availability, and other factors – including, but not limited to: (1) unique use, or (2) overlapping coverage, or (3) nearby public parking areas with adequate capacity, or (4) nearby on-street parking with adequate capacity.

In its motion for summary judgment, Applicant again focuses on the DRB's conclusion that the application included too much parking without justification. This is not binding in this de novo appeal and is not grounds for finding that the Regulations relating to parking are unconstitutionally vague. The Court will therefore apply § 5.5 as written in its review of the application as that Regulation is not unconstitutionally vague.

**B.      Interpretation of Regulatory Provisions**

We next address Applicant's questions regarding the proper interpretation of certain provisions of the Regulations. As indicated above, we interpret a zoning ordinance using the familiar rules of statutory construction and will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.

        i.      Site Plan Review Standards, § 4.3.4

Applicant asks whether the standards included in § 4.3.4 constitute "matters which must simply be taken 'into consideration' when evaluating a site plan application, or regulatory mandates which must each be satisfied in order to receive site plan approval?" Applicant contends that according to the plain language, the nine factors set out in § 4.3.4 are factors for consideration and not mandatory requirements.

The introductory paragraph of § 4.3.4 states that the DRB has three options in reviewing a site plan application: approval, approval with conditions, or disapproval. The introduction also states that in making this decision, the DRB "shall take into consideration the [listed] standards." Id. (emphasis added). The DRB must "consider" every one of the nine site plan review standards when reviewing an application. Applicant's question therefore rests on what it means to consider each standard.

We are guided by the plain and ordinary definition of the verb "consider." A dictionary definition of "consider" is "to think about seriously" or "to take into account." Webster's II New College Dictionary 246 (3d ed. 2005). Thus, based on the plain language, the DRB must take

into account all nine standards in making a decision to approve, approve with conditions, or disapprove the site plan application. This does not necessarily require a positive finding under each standard merely that each standard be taken into account. Nor does it preclude the DRB, or this Court, from disapproving an application if, after considering all nine standards, it makes a negative finding under a single standard and determines that imposing conditions would not redress the inadequacy.

With respect to Site Plan Review Standards related to vehicular and pedestrian circulation, Applicant asks whether reference to vehicular and pedestrian circulation in Regulations §§ 4.3.4(1) and (2) allows for "consideration of traffic congestion beyond the extent to which congestion issues relate to safety." As indicated above, the standards in § 4.3.4(1)–(9) must be considered but are not necessarily prerequisites for approval. We also note that, according to the plain language, the standards in subsections (1) and (2) do not limit the DRB's review to issues of safety. Specifically, § 4.3.4(2) states that the DRB must consider "[a]dequacy of circulation, parking and loading facilities with particular attention to safety." This clearly indicates that in considering the adequacy of circulation, although safety is to be the focus of the DRB's review, the DRB may look beyond safety concerns.

The Court will apply the plain meaning of these sections as outlined above in this de novo appeal.

ii.  Interpretation of Parking Requirements, § 5.6.3

In the Automotion appeal, Applicant asks whether the provisions under Regulations § 5.6.3 related to parking apply only to "new structures" and are therefore inapplicable to the site plan revision application at issue in that appeal. (Applicant's Statement of Questions [Automotion Appeal] at 2, filed June 20, 2014). Regulations § 5.6.3 states that "[p]arking and loading areas for any new structures shall be located at the side or rear yards of the structure." By its plain language, § 5.6.3 applies to new structures. Furthermore, this provision is specifically made applicable to the review of site plan applications. Regulations § 4.3.4(9).

Although clear by its plain language, § 5.6.3 has no effect on the number of parking spaces set by a prior, unappealed permit. Appellants do not contest the plain language of these Regulations, but instead state that the number of parking spaces was set by a prior, unappealed

permit and therefore cannot be increased through this site plan application. We disagree and conclude that if Applicant seeks to increase the number of parking associated with the Automotion use, it must obtain all appropriate approvals under the applicable Regulations.

**C.       Ability to Impose Conditions in this de novo Appeal**

Finally, we address Applicant's questions asking "to what extent" site plan approval may be conditioned upon landscaping, lighting, and stormwater requirements "that are not based upon any express standards set forth in the Regulations?"[4] We find that there is clear authority in the enabling legislation and in the Regulations for the imposition of reasonable conditions. 24 V.S.A. § 4416, Regulations § 4.3.2. As the Regulations contain sufficient standards to review the application, the Court my impose conditions on landscaping, lighting, and stormwater to ensure that proposed development adequately addresses those elements.

Applicant also asks whether requiring a culvert and other site plan elements to mitigate existing drainage problems exceeds the regulatory authority of the DRB and therefore this Court on appeal. As a primary matter, this question asks the Court to determine the DRB's purpose in establishing the condition, which requires a factual record. Absent such a record, the Court will not opine on hypotheticals. Whether the DRB may impose a condition requiring a culvert is not a question of regulatory interpretation or enforceability, but rather a question of what conditions may be imposed on this Project. The Court will make that determination within the context of the de novo appeals now before us. We conclude that regardless of the existing drainage problems at the site, Applicant is not relieved from the obligation to show that the development will have adequate stormwater management and drainage for the site.

**III.      Appellants' Cross-Motion for Summary Judgment and Motion to Dismiss Appeals**

Appellants' move for Summary judgment on their Questions 1 and 2 in the Hannaford appeal and moves to dismiss all appeals now pending before the Court. First, Appellants ask whether the failure to notice associated site plan approvals (the subject of the Automotion and Aubuchon appeals) was materially misleading and therefore requires the remand of the Hannaford site plan application. Appellants also ask whether the Hannaford site plan application is void, again requiring a remand, because although the Project involves "land

---

[4] Question 6 in the Aubuchon and Automotion appeals, Question 9 in the Aubuchon and Hannaford appeals, and Questions 7 and 8 in the Hannaford appeal.

development" on other parcels of land, no zoning applications for that development have been filed nor any public notice or hearing held. Finally, in their motion to dismiss, Appellants argue that as a result of Applicant's piecemeal approach, all three of the municipal site plan applications now before the Court essentially seek improper advisory opinions, therefore eliminating this Court's jurisdiction. Applicant opposes dismissal and seeks judgment in its favor with regard to Appellants' Questions.

**A.      Notice**

Appellants assert that the Hannaford site plan application must be remanded for the failure to notice the site plan approvals that are the subject of the Automotion and Aubuchon appeals at the time of the Hannaford site plan application. Appellants argue that 24 V.S.A. § 4464 requires that for "[a]ll development review applications before an appropriate municipal" certain notice procedures must be followed, including the requirement that "[t]he notification shall include a description of the proposed project." This, they argue, means that the entire "project" be noticed at once, including the Hannaford site plan approval as well as the Aubuchon and Automotion site plan amendments. Thus, it is their position that the failure to notice all three applications at one time requires dismissal of the Hannaford appeal. This Court's review, however, is limited to the development review application that was before the municipal panel. In re Torres, 154 Vt. 244, 236 (1990).

Nowhere does Chapter 117, or any other law Appellants have pointed us to, require that notice for any and all related permits be given at one time. While the Court does not condone intentionally splitting a single project into different subparts in order to obfuscate potential impacts of the project as a whole, where an entire development proposal involves multiple required approvals, the law does not require that the applicant apply for all permits at one time and in one proceeding. Here, Applicant applied for the site plan approval for its development on Lot 15. Completion of that development site plan necessitated that Applicant seek amendments of approvals for adjacent properties. Appellants provide no legal support for their assertion that this requires the notice of these amendments within the site plan application for the site plan for Lot 15.

In fact, any given development proposal may require a number of state and municipal permits and approvals before it may be completed. A given development could require any or all of the following: subdivision approval, conditional use approval, site plan approval, design review approval, an Act 250 State land use permit, a State Agency of Natural Resources stormwater permit, a State Agency of Natural Resources Wastewater and Water Supply permit, in addition to amendments to any of these, or any additional permits or approvals. Likewise, a given project may require offsite remediation or amendments to existing permits on other related parcels that may itself constitute land development requiring approval from state or local government. If the failure to have any one of these permits meant that there was no jurisdiction to hear a different permit application, it would be impossible to obtain even one permit. Appellants' motion for summary judgment is therefore **DENIED** as to Questions 1 and 2.

B.      **Applications for Additional Land Development**

Appellants again provide no legal support for their statement that applications for development be consolidated with applications for site plan approval for Lot 15. Appellants argue that Applicant's intent to include a real property limitation on the future use of other property it owns constitutes "land development" under the Regulations. The other "land development" that Appellants point to includes improvements and reconfigurations to sidewalks and roadways in improve pedestrian and vehicular circulation. It is within the authority of the DRB to include these sorts of off-site improvements to the roadways and sidewalks in the vicinity of the project. Regulations §§ 4.3.2, 4.3.4(1). Even if we were to accept that complying with these conditions required future approvals, those approvals are not before the Court and are not grounds for dismissal of the appeals that are. Appellants' motion for summary judgment on these grounds is therefore **DENIED** as to Questions 1 and 2.

C.      **Improper Advisory Opinions**

In their motion to dismiss the pending appeals, Appellants also contend that Applicant seeks an advisory opinion because the actual construction of the project is hypothetical if additional approvals may be necessary. This argument has no basis in law and is contrary to long standing practice in Vermont. A developer who wishes to develop a parcel of land may,

16

and often does, seek one level of approval before another. A developer may wish to obtain a State Act 250 Land Use Permit before seeking a municipal permit in the belief that one process will be more difficult than the other. Regardless of whether the development will ever occur, the process of obtaining a permit to construct a particular development presents a real and non-hypothetical matter before a municipal panel, a district environmental commission, or this Court. The failure to have obtained, or even sought, additional required approvals for a project does not deprive this Court of jurisdiction of a separate approval otherwise properly appealed to this Court. Appellants' Motion to Dismiss, filed in Dockets 129-9-12 Vtec, 163-11-12 Vtec, 68-5-14 Vtec, 69-5-14 Vtec, and 70-5-14 Vtec is therefore **DENIED** as is Appellant's Cross-Motion for Summary Judgment as to Appellants' Questions 1 and 2 in the Hannaford site plan appeal, Docket 163-11-12 Vtec.

## Conclusion

For the reasons stated above, we **DENY** Applicant's motion for partial summary judgment on its Questions 2–6, 8, and 9 in the Automotion appeal, Questions 2–6 and 8–11 of the Aubuchon appeal, and Questions 2–4 and 7–9 of the Applicant's Hannaford site plan appeal. Furthermore, we **DENY** Appellants motion for summary judgment and motion to dismiss Appellants' Questions 1 and 2 in the Hannaford site plan appeal.

Electronically signed on March 04, 2015 at 02:28 PM pursuant to V.R.E.F. 7(d).

*Tom Walsh*

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division